## Ages Ridge Coal Company v. Reed.

(Decided November 23, 1916.)

### Appeal from Harlan Circuit Court.

Master and Servant—Mines and Minerals—Violation of Rule.—If a miner receives injuries on account of his violation of a reasonable rule of the company well known to him, he cannot recover damages for the injury sustained.

ZEB A. STEWART for appellant.

FORRESTER & GOSS and C. I. DAWSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Reed, sustained personal injuries, as he claims, on account of the foul gas and bad air in a mine of the appellant company in which he was working. To recover damages for the injuries so sustained he brought this suit, and on a trial there was a judgment in his favor for five hundred dollars.

A reversal is asked on the grounds that the verdict was excessive and that the court erred in giving and refusing instructions.

Upon the subject of the amount recovered, and passing for the present the question as to whose fault caused the injuries complained of, the evidence as to the extent of the injuries is not satisfactory. It is undisputed, however, that in the early morning of June 25, 1914, Reed was overcome by either foul gas, bad air, or smoke in the room in which he was working and was removed from the mine in a prostrated condition. He commenced to work again for the same company on June 29th and worked for it until July 22nd, earning about the same or perhaps more wages per day for the month beginning June 29th than he did for the month ending June 25th. In August he commenced working for the Clover Fork Mining Co. and worked for that company until late in the spring of 1915, earning probably as much for each day he was at work during that time as he had earned per day previous to June 25th, although there is some dispute in the evidence on this point, he claiming that his earning capacity was reduced by the ill effects from the gas, smoke or bad air from which he suffered on June 25th, while the records of the companies for which

he worked show that he earned more after June 25th than he did before.

Reed also claims that as a result of the bad air in the mine his health was seriously injured, that he suffered with headaches, with pains in his lungs and his back, and that he suffered continually with these ailments from June 25th down to the time of the trial, several months afterwards. He also testifies that the air in the mine was bad and that the air courses were obstructed in such a way as to interfere with the circulation of the air not only on June 25th but for some time before. In short, his testimony went to show that the company did not observe the statute in respect to furnishing pure air for its mine, and that this failure to observe the statute had continued for some time before June 25th.

As the case must be reversed for other reasons, we will not at this time express any opinion as to the excessiveness of the verdict.

It was shown without contradiction that the company had adopted rules under which shots were to be fired in the mine only in the morning about 11:30, just before the men went to dinner, and in the afternoon about 4:30, just before they quit work for the day. It is also undisputed that it was not safe for a miner to remain in a room immediately after shots were fired, as the smoke from the explosion of the powder would fill the room with noxious fumes that were dangerous to the health and sometimes put in peril the life of the miner. It was for this reason that the rules required the shots to be fired at the times stated, so that the smoke would have time to clear away before the miners went back to work after the shots were fired; and Reed admitted that he knew of these rules and also that it was dangerous to remain in a room just after shots had been fired.

He also testified that he did not fire any shots in the room he was working in on the morning of June 25th. That the last shots were fired in the room in the afternoon before; and further said that if a person remained in a room while the smoke was clearing away immediately after a shot was fired, it would affect him in the same way that he was affected on this morning.

One of the principal defenses of the coal company, and it was supported by considerable evidence, was to the effect that Reed fired shots in his room on the morn-

ing of June 25th without leaving the room and that the smoke from these shots caused the injuries of which he complains. This was made a distinct issue in the case. It was an important issue because Reed, as we have said, testified that he knew the rules of the company providing when shots should be fired and also knew it was dangerous to remain in a room after shots had been fired, and that he did not fire any shots on this morning. It will, therefore, be seen that the question whether he did fire any shots on that morning was a very material one in the case.

The court in instruction number three said to the jury: "If you believe from the evidence that plaintiff, on the morning of June 25th, the day upon which he claims to have been injured, fired shots or blasts in his room or working place, and remained there at work, and that his injuries, if any, resulted therefrom, and that plaintiff knew, or by the exercise of ordinary care could have known, of the danger incident to his remaining, if he did so remain at work, in his room or working place, then he was guilty of contributory negligence and you should find for the defendant."

This instruction did not, as we think, advise the jury correctly upon this issue. The jury should have been told that if they believed from the evidence that the plaintiff, on the day he claims to have been injured, went into his room and fired off any shots or blasts at a time when they should not have been fired according to the rules of the company, with which he was familiar, and that by reason of the smoke or gas, if any, arising from said shots so fired in violation of the rules of the company, the plaintiff received the injuries of which he complains, if any, they should find for the defendant.

In the case of Bon Jellico Coal Co. v. Wilson, 167 Ky. 590, the facts were very similar to the facts in this case, and it was held error not to give such an instruction as we have indicated. Instruction "A." offered by the coal company presented in somewhat different form this view of the law, and either it or a correct instruction should have been given by the court in place of instruction number three. On another trial the court will give the instruction outlined.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.